| | |
|---|---|
| NICOLE CROTTS,<br><br>            Plaintiff,<br><br>v.<br><br>MOORESVILLE HOSPITAL<br>MANAGEMENT ASSOCIATES, LLC,<br>d/b/a LAKE NORMAN REGIONAL<br>MEDICAL CENTER, INC.<br><br>            Defendant. | **AMENDED COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended ("Title VII") and §1981 of the Civil Rights Act of 1866, 42 U.S.C. §1981 (§1981"). Plaintiff was subjected to discrimination based upon her race and sex and retaliated against in violation of Title VII. She was subjected to discrimination based on her race and retaliated against for having engaged in protected activity under §1981.

## I. INTRODUCTION AND JURISDICTION

1. This is an action seeking legal, equitable and declaratory relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. (Title VII) and the Civil Rights Act of 1866, 42 U.S.C. §1981. Plaintiff contends that she was unlawfully discriminated against and terminated on account of her race and sex and retaliated against for engaging in protected activity.

1

2. Jurisdiction of the court is invoked pursuant to 28 U.S.C. §1343, this being a proceeding seeking to enforce rights and remedies secured in Title VII and §1981. Jurisdiction is also conferred upon this court by 42 U.S.C. §2000e et seq.

## II. PARTIES

3. Plaintiff is a Caucasian female citizen of Mocksville, Davie County, North Carolina.

4. Defendant Mooresville Hospital Management Associates ("MHMA") is a limited liability company which does business in North Carolina and is an employer within the meaning of Title VII.

## III. FACTS

5. Plaintiff is an experienced registered nurse who had over 20 years of experience in nursing when she left her position at Davis Regional Medical Center, where she held various positions up to the Director of Women's Services which she held from 2015 through 2022. Upon the closure of Davis Regional Medical Center as a hospital, Plaintiff and other staff members at Davis Regional Medical Center were transferred to Lake Norman Regional Medical Center ("Lake Norman"). Davis Regional Medical Center and Lake Norman Regional Medical Center were owned and operated by Community Health System Professional Services during a part of Plaintiff's employment. Defendant MHMA was Plaintiff's employer during relevant times to this Complaint and operated Lake Norman Regional Medical Center.

6. Plaintiff interviewed for the position of Director of Women's Services at Lake Norman during the restructuring of the Davis Regional Medical Center. She was hired for the position of Director of Women's Services on August 1, 2022, but began full time in that position

at the end of August. Lance Coleman began at Lake Norman as a Chief Nursing Officer ("CNO") on or about September 20, 2021. Plaintiff reported directly to Coleman.

7. There were adjustments in transitioning a large group of nurses from Davis Regional to Lake Norman. The nurses who came from Davis Regional were subjected to bullying and non-cooperation from the Lake Norman nurses. Plaintiff, even as the Director of Women's Services, was subjected to the same inappropriate behavior, including being called a crack head whore, and incompetent, and she was accused of having sex with her boyfriend in the parking lot and disappearing during work. When Plaintiff addressed these concerns with Leslie Morton, the Human Resources ("HR") Director, she was advised to give a general discussion about negativity with the nurse involved and to ask that nurse if she had any concerns. When Plaintiff had the meeting with the nurse involved, that nurse refused to sign a written warning and denied the issues, even though another employee had submitted a written complaint about that nurse.

8. The inappropriate behavior and harassment did not stop after the employee was warned. Plaintiff received a report that two nurses had made racial remarks and withheld care from a patient due to the fact that the patient was in a biracial relationship. Plaintiff took that matter to HR and was told by CNO Coleman and the HR Director to go over the Cultural Handbook with all staff and have each staff member re-sign the Handbook. She was instructed to give the two nurses who made the racial remarks a written warning. Plaintiff urged the CNO and the HR Director that withholding care from a patient and making racist remarks about a patient should be taken more seriously, but she was given no instructions beyond issuing a written warning.

9. Plaintiff and nurses from Davis were subjected to demeaning and harassing remarks from a physician, Dr. James Al-Hussaini, who remarked that they had "come over on the boat", repeatedly and openly questioned their competency, and said that the Lake Norman physicians

3

should have been allowed to interview the nurses from Davis and choose the ones they wanted. Nurses were not interviewed and hired by physicians but by the hospital.

10. On October 27, Plaintiff met with CNO Coleman and Dr. Wellbaum to discuss issues on the unit, particularly an issue raised by a registered nurse about a conversation Dr. Grant Miller was having at the desk in front of several nurses that concerned and upset the RN. The RN reported that Dr. Miller stated that "women are only put on this earth to have babies, that's why they are here," and discussed his religious belief. He remarked "Let me tell you about my Savior" and left a note for one of the nurses saying "Let me talk to you more about my Savior" and told her how she should live and that he would talk to her about his religious views. Dr. Wellbaum agreed that the conversation that Dr. Miller had and the comments by Dr. Al-Hussaini were inappropriate and should not be taking place in the workplace. Plaintiff agreed to meet with the doctors to discuss their behavior.

11. Plaintiff was in an interracial relationship and had friends of different races, ethnicities and backgrounds. When she arrived at Lake Norman, she was told by the Chief Executive Officer ("CEO"), Matthew Littlejohn, that she would get on the physicians' "good side" immediately if she would "take care of a problem on the unit." The "problem" was that there was a nurse that they wanted to get rid of. When Plaintiff asked what the problem with the nurse was, she was told that "Well, it's a touchy situation, but I know you can handle it because you know how to deal with those people." When asked what he meant by that, the CEO said that he didn't want it to become a racial thing but since she had experience with "them" that "she could deal better with those people." He advised that they already had a situation the previous year with an African-American woman that they fired. Plaintiff told him that his comment was racist and

4

ignorant. The CEO just laughed it off and told her that if she wanted to get on the physicians' good side, this would be one sure way to do it.

12. Plaintiff experienced other racist comments by physicians. She encountered a physician, Dr. James Al-Hussaini, who asked her in the break room if she was in a relationship and, before she could answer, said "Oh yeah, you date one of them."

13. Dr. Al-Hussaini and Dr. Miller both openly talked about the international nurses on the unit and asked what their credentials were for being nurses and "if people were going to be able to understand them." They sometimes used racial slurs in referencing the employees. Plaintiff made HR aware of the discriminatory remarks by the physicians and the nurses. The Human Resources Department did not address her concerns, but Plaintiff was told to hang in there and that HR was aware of the harassment and bullying that she was going through in the department.

14. On or about December 14, 2022, Plaintiff reported a physician, Dr. Al-Hussaini, for sexual harassment of a nurse. Plaintiff submitted the nurse's account of the sexual harassment and submitted the statement of another registered nurse who witnessed the harassment. Plaintiff was given no instructions on how to address the issue.

15. Plaintiff was made aware that after Dr. Al-Hussaini learned that he was reported for the sexual harassment of the nurse, went to the CEO and demanded that something be done about Plaintiff. Within five days after Plaintiff reported Dr. Al-Hussaini's inappropriate sexual harassment, Plaintiff was terminated from her position.

16. In her tenure at the hospital, no one in Plaintiff's chain of command or the Human Resources Department gave her an evaluation or told her in any way where her work performance was unsatisfactory.

5

## IV. CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION: RACE DISCRIMINATION UNDER TITLE VII AND §1981

17. Paragraphs 1 through 16 above are realleged and incorporated herein.

18. Plaintiff was subjected to race discrimination from members of management and physicians when she was questioned about being in an interracial relationship. Plaintiff was offended by those comments. Plaintiff reported the offensive and inappropriate racist remarks made by physicians to Human Resources, but nothing was done to correct the behavior.

19. The racial harassment to which Plaintiff was subjected was because of her association with persons who were not Caucasian. Plaintiff found the racist remarks offensive to her. The remarks were offensive both subjectively and objectively and affected Plaintiff's work environment.

20. Defendant's actions were severe and pervasive.

21. As a result of Defendant's actions, Plaintiff suffered economic harm and emotional distress.

22. The actions of Defendant violate Title VII and §1981.

## SECOND CAUSE OF ACTION: SEX DISCRIMINATION

23. Paragraphs 1 through 22 above are realleged and incorporated herein.

24. Plaintiff was subjected to inappropriate sexist remarks by members of the physician staff which, when reported, were left unaddressed. The behavior continued to the detriment of Plaintiff and other female nurses who were also offended by it. One nurse was so offended that

6

she resigned. Plaintiff's efforts to get management to address the issues were left unanswered. Defendant's actions were severe and pervasive.

25. The sexist behavior was both subjectively and objectively offensive and affected Plaintiff's working conditions.

26. The actions of Defendant violate Title VII.

27. As a result of Defendant's actions, Plaintiff suffered economic and emotional distress damages.

### THIRD CAUSE OF ACTION: RETALIATION

28. Paragraphs 1 through 27 above are realleged and incorporated herein.

29. Plaintiff engaged in protected activity when she repeatedly brought to the attention of HR, her Chief Nursing Officer and the head of the Obstetrics Department racist comments by nurses and physicians. She also reported inappropriate sexist remarks directed towards the nursing staff and the sexual harassment of one nurse in particular. Plaintiff made these reports both verbally and in writing. Plaintiff also made clear to the CEO that his remarks about a "problem on the unit" were also racist. Plaintiff's complaints and reports constitute protected activity and are protected under Title VII and §1981.

30. Plaintiff's remarks regarding the sexual harassment and sexual behavior were protected activity under Title VII. Plaintiff's reports and complaints about the racist remarks and behavior are protected activities under Title VII and §1981. But for Plaintiff's engagement in the protected activity, she would not have been terminated from her position. In fact, one of the offending physicians demanded that something be done with her. The hospital complied and terminated Plaintiff. But for her engagement in the protected activity, Plaintiff's employment

7

would not have been terminated. Defendant's actions constitute retaliation, in violation of Title VII and §1981.

32. As a result of Defendant's actions, Plaintiff suffered an adverse employment consequence, the termination from her employment, and suffered economic losses and emotional distress. As a result of the actions of Defendant, Plaintiff required medical attention for high blood pressure, migraines, sleep disturbances, anxiety and depression from the stress and hospital work environment that she faced on a daily basis.

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

32. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC), Charge Number 430-2023-02307, received by the EEOC on April 25, 2023. The EEOC issued a Determination and Notice of Rights on January 14, 2025. Plaintiff is filing this action within 90 days of receiving the Determination and Notice of Rights. She has complied with all jurisdictional requirements and has exhausted administrative prerequisites before initiating this action.

## VII. JURY TRIAL DEMANDED

33. Plaintiff hereby demands a trial by jury.

## VIII. PRAYER FOR RELIEF

34. Wherefore, Plaintiff prays that the discrimination alleged herein be remedied in full and that the Court, after a jury trial:

    (1) Declare the actions complained of herein to be illegal;

    (2) Issue an injunction enjoining Defendant, its agents, employees,

successors, attorneys and those acting in concert or participation with Defendant and at their direction, from engaging in the unlawful practices set forth herein and any other employment practice to be shown in violation of Title VII of the Civil Rights Action of 1964 and 42 U.S.C., §1981;

(3) Award Plaintiff compensatory damages, including damages for mental anguish and stress, and harm to Plaintiff's career opportunities;

(4) Award Plaintiff back pay and all other economic damages to provide make whole relief;

(5) Award Plaintiff her costs and expenses in this action, including reasonable attorney's fees, costs and other litigation expenses;

(6) Grant such other and further relief as may be just and necessary to afford complete relief to Plaintiff.

This 9th day of June, 2025.

*/s/ Geraldine Sumter*
GERALDINE SUMTER
N.C. Bar No. 11107
Ferguson Chambers & Sumter, PA
309 East Morehead Street, Suite 110
Charlotte, North Carolina 28202
Telephone:   (704) 375-8461
Facsimile:    (980) 938-4867
E-Mail:        gsumter@fergusonsumter.com

**ATTORNEY FOR PLAINTIFF**

9